In **Jane Doe v. Dept. Health & Mental Hygiene**, Case No. 1:14-cv-03906-WMN, U.S. District Court for the District of Maryland

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Jane Doe, by and through her next friend Sarah Rhine, and by counsel, the Maryland Disability Law Center ("MDLC") and Venable LLP; MDLC, in its official capacity as the Protection and Advocacy agency for the State of Maryland; and Defendants Van T. Mitchell, in his official capacity as Secretary of the Maryland Department of Health and Mental Hygiene ("DHMH"), and on behalf of all of the named Defendants, by counsel Brian E. Frosh, Attorney General of Maryland, and Kathleen A. Morse, Deputy Counsel, DHMH (collectively, Plaintiff, MDLC, and Defendants are referred to as the "Parties"), come now to enter into this settlement agreement (this "Agreement") in the matter *Jane Doe v. Maryland Department of Health and Mental Hygiene, et al.*, Civ. A. No. 1:14-cv-03906-WMN, and state as follows:

**THIS SETTLEMENT AGREEMENT AND RELEASE** is executed on this _____ day of _____, 2016, by and between Jane Doe, through her next friend, Sarah Rhine, Esq., ("Plaintiff" or "Releasor"); MDLC; and the Maryland Department of Health and Mental Hygiene and each of the individual defendants named in the complaint ("Defendants," "Releasees," the "Department," or "DHMH"), in reference to the allegations set forth in Plaintiff's Complaint, removed to the U.S. District Court for the District of Maryland (the "Federal Court"), *Jane Doe v. Maryland Department of Health and Mental Hygiene, et al.*, Case No. 1:14-cv-03906-WMN ("*Doe v. DHMH*"), on or about December 18, 2014.

I.      **Recitals.**

**WHEREAS**, Defendants desire to informally and amicably resolve and settle without further litigation the remaining claims in this case as well as any other pending claims or claims that may be raised in the future between Plaintiff and Defendants arising out of events occurring during Plaintiff's court-ordered commitments to Clifton T. Perkins Hospital Center and the Developmental Disabilities Administration's Secure Evaluation and Therapeutic Treatment ("SETT") facility in Jessup during the time period referenced in her Complaint, specifically November 6, 2011 and November 3, 2012;

**WHEREAS**, the Department agrees to undertake the actions set forth in this Agreement in order to enhance its efforts to reduce, prevent, and treat Sexual Abuse (as defined below) and sexually inappropriate behavior experienced by individuals within its facilities; and

**WHEREAS,** Defendants urge Plaintiff to review the Agreement with her attorneys; and

**WHEREAS,** Plaintiff's next friend, Sarah Rhine, has read this Agreement personally, and has discussed it with legal counsel on several occasions and has also discussed it generally with Ms. Doe; and

**NOW THEREFORE**, in consideration of the promises and mutual covenants contained herein, the Parties agree as follows:

II.     **Scope.**

The Parties agree that the obligations assumed by the State pursuant to this Agreement extend to all State psychiatric facilities and Regional Institutes for Children

2

and Adolescents under the control of the Behavioral Health Administration and to all of the Developmental Disability Administration's State Residential Centers and Forensic Residential Centers.  The facilities are listed in the Definitions section of this Agreement.

## III.     Definitions.

The Parties agree that the terms contained herein shall be defined as follows:

1.  "Complaint" means the complaints filed in *Doe v. DHMH*.

2.  "BHA" means the Maryland Behavioral Health Administration.

3.  "BPW" means the Board of Public Works of Maryland.

4.  "Central Coordinator" means the DHMH position(s) described in Section XIV, below.

5.  "DDA" means the Maryland Developmental Disabilities Administration.

6.  "DHMH" means the Maryland Department of Health and Mental Hygiene.

7.  "Effective Date of this Agreement" means the latest date on which this Agreement is executed and approved, as needed, by the Board of Public Works and the Federal Court.

8.  "External Law Enforcement Agency" means the city, county, or State police force that specializes in investigating sexual abuse allegations and responds to incidents at each Facility in the jurisdiction assigned to that police force; it does not include Facility Police.

9.  "Facility Police" refers to the law enforcement operations at a Facility provided directly by or under contract with the State.

3

10. "Facility Staff" means all personnel working at a State Facility, including employees, contractors and volunteers.

11. "Individual" means one who is receiving services or treatment at a State Facility.

12. "Initial Plan of Care" means the first plan of care created for an Individual by the admitting health provider following admission.

13. "MDLC" (also known as "Disability Rights Maryland") means the State-designated Protection and Advocacy agency.

14. "Medical Record" means the medical and other records maintained by the Facility for individuals in its care.

15. "Protection Plan" means a plan of care and/or treatment, as appropriate, to address the risk of an individual being the victim or perpetrator of Sexual Abuse while in a Facility.

16. "Risk Assessment Screen" means the uniform tool that will be used by all Facilities to screen for a history of sexual abuse and related trauma as described in Section VIII.

17. "Sexual Abuse" is a generic term including Wrongful Sexual Acts and Sexual Assaults.

18. "Sexual Act" means those acts described in COMAR 10.01.18.02.B.(8).

19. "Sexual Assault" means any and all of the following:

   a. Rape, as defined in Md. Crim. Code §§ 3-303 and 3-304;

4

b. A sexual offense, as defined in Md. Crim. Code §§ 3-305 through 3-308;

c. Attempted rape, as defined in Md. Crim. Code §§ 3-309 and 3-310, or attempted sexual offense, as defined in Md. Crim. Code, §§ 3-311 and 3-312;

d. Any Sexual Act between any Facility Staff and any individual receiving services at the State Facility; or

e. Any other Sexual Act that is illegal under Maryland or federal law.

20. "State Facility" or "Facility" means a psychiatric hospital, a Regional Institute for Children and Adolescents (COMAR 10.21.06.02), a State Residential Center (COMAR 10.22.01.01 B.(55)), or a Forensic Residential Center (COMAR 10.22.01.01 B.(20-1)) operated by the State, and includes:

a. Clifton T. Perkins Hospital Center;

b. Eastern Shore Hospital Center;

c. Springfield Hospital Center;

d. Spring Grove Hospital Center;

e. Thomas B. Finan Center;

f. Regional Institutes for Children and Adolescents;

g. Holly Center;

h. Potomac Center; and

i. The Secure Evaluation and Therapeutic Treatment centers.

5

21. "Team":

    a. For individuals in a mental health facility, has the meaning set out in COMAR 10.21.03.02C for "mental health professional team"; and

    b. For individuals in a DDA facility, has the meaning set out in COMAR 10.22.01.01B.(58).

22. "Treatment Plan":

    a. For individuals in a psychiatric hospital: or a Regional Institute for Children and Adolescents, has the meaning set out in COMAR 10.21.03.03, and includes the Protection Plan described in Section IX, if any; and

    b. For individuals in a DDA facility; has the meaning set out in COMAR 10.22.01.01B(28), and includes the Protection Plan described in Section IX, if any.

23. "Treatment Plan Problem" means a medical, mental health, physical, safety, behavioral, or other issue experienced by an Individual that is identified by the Individual's Team as needing treatment and/or care.

24. "Treatment Plan Problem Number" means the number assigned to each Treatment Plan Problem by the treatment Team as an identifier, to be used in all records of treatment and care.

25. "Universal Safety Precautions" means an established set of measures, procedures, and protocols taken in order to maintain the safety of Individuals upon admission to a State Facility, which may include but are

6

not limited to unit restriction, including dining on the unit; increased nursing contacts; restrictions on activities, more frequent observation by nurses; 1:1 or 2:1 staffing for the individual; and similar or additional precautions.

26. "Wrongful Sexual Act" means any Sexual Act that is made or threatened to be made without consent of the individual who is the recipient of the action and is not illegal under Maryland or federal law.

## IV. Jurisdiction, Parties, and Dismissal and Duration of Agreement.

A. The Parties stipulate that the Court has personal jurisdiction over Defendants for purposes of the Action and subject-matter jurisdiction over the claims alleged.

B. As of the Effective Date of this Agreement, MDLC shall be deemed to be a party-plaintiff to this Agreement with the same authority as to this Agreement that the Plaintiff has.

C. All of the terms of this Agreement, except the terms and provisions in Section V.B.1 and V.B.3, shall terminate at the end of five years from the Effective Date of this Agreement.

D. The Parties agree to file a joint motion to dismiss/stipulation of dismissal of *Jane Doe v. Maryland Department of Health and Mental Hygiene, et al.*, Civ. A. No. 1:14-cv-03906-WMN upon execution of this Agreement and approval by the Board of Public Works and the Federal Court.

E.  The Parties agree that the Agreement is made in Maryland and shall be construed in accordance with the laws of Maryland.

F.  The Parties state that this Agreement represents the full agreement of the Parties on the subject-matter contained in the Complaint and may be changed only pursuant to written agreement signed by Plaintiff's counsel, by MDLC as a party-plaintiff, and by Defendants' counsel as duly authorized.

G.  This Agreement is contingent upon approval by the BPW and the Federal Court, and without such approvals, the Agreement in its entirety, including the release terms and provisions, is null and void and may not be used by anyone for any purpose.

## V.   **Compensatory Damages and Other Individual Relief.**

A.  In consideration of the promise of payment by DHMH of $400,000 and services to Jane Doe as set forth in this Section, and the systemic relief required by this Settlement Agreement, Jane Doe, through her next friend, has signed a General Release.    If this Agreement is not approved by the BPW and Federal Court, the General Release is null and void and may not be used in any court or in any proceeding for any purpose.  If this Agreement is approved by the BPW and Federal Court, the General Release becomes effective as of the Effective Date of the Agreement.  Payment shall be made as directed by Plaintiff's counsel within forty-five days of the Effective Date of this Agreement.  Payment of damages to Plaintiff shall ultimately be placed into a special needs trust to be established for Plaintiff, less any payment for

8

attorney's fees and costs.  If approval of the special needs trust is needed from the Maryland Office of the Attorney General, the parties shall work cooperatively to secure such approval.

B. In addition to the financial award set forth above, DHMH will fund, at minimum,

    1. The following services whenever Jane Doe is residing in the community:

        a.  1:1 support staff twenty-four hours per day;

        b.  Residential accommodations that allow her to live in a unit without others, except support staff; and

        c.  Day habilitation services to include supported employment and excluding sheltered workshop services; and

    2. An expert consultant, agreed upon by the Parties, to develop a person-centered plan of day habilitation services for Jane Doe within three months of the Effective Date of this Agreement.  If the Parties cannot agree on the selection on an expert consultant, they shall submit their selections to Christopher Smith, Ph.D., with the Kennedy Krieger Institute in Baltimore, Maryland, who will consider the recommendations of the Parties and select the expert consultant, which selection shall be binding upon the Parties.

    3. If, after five years, the recommendations for Ms. Doe's Individual Plan and services change, and either Ms. Doe or DDA disagrees with the

recommended changes, DDA will fund an independent evaluation of her needs for consideration by the parties and her team.  The expert consultant would be chosen using the procedure described in paragraph B.2, above.

VI.  **Policies, Proposed Regulations, Written Guidance, and Training.**

A. The Department shall adopt written policies and guidance in order to meet its obligations under this Agreement.  The Department shall also propose regulations to implement the provisions of this Agreement within five years of the execution of the Agreement and make good faith attempts to secure final adoption of such proposed regulations.

B. Such policies, proposed regulations, and written guidance shall apply to all State Facilities.

C. The Department shall develop written guidance for the use of the Risk Assessment Screen and individual Protection Plans described herein, including:

1. Use of the Risk Assessment Screen within 48 hours after an Individual's admission to a Facility;

2. Continued, periodic use of the Risk Assessment Screen in accordance with Section VIII of this Agreement; and

3. Identifying potential risk and trauma reduction strategies, including the development of individual Protection Plans, as a response to issues identified through the Risk Assessment Screen or other information.

10

D.  The Department shall provide annual training to Facility Staff on its obligations under this Agreement for implementation of the terms of this Agreement, which shall include specialized training on the Risk Assessment Screen and on the State Facilities' response to allegations of Sexual Abuse.

E.  The Central Coordinator shall be tasked with oversight of the implementation of this Agreement, consistent with Section XIV.

## VII.   **Process Reforms.**

The policies adopted or regulations proposed in accordance with this Agreement shall include provisions for the following:

A.  Initial Safety.

1.  As soon as practicable upon learning that an Individual is to be admitted, and within three business days after admission, a Facility shall make diligent efforts to collect medical records, consistent with Section XI (Medical Records) of this Agreement;

2.  Upon admission of an Individual, the Facility shall use and follow Universal Safety Precautions to protect the Individual from Sexual Abuse and other harm.

3.  Within 48 hours after admission to the Facility, the Individual shall have a Risk Assessment Screen performed, in accordance with Section VIII of this Agreement, as well as a suicide risk assessment.

4.  If the information gathered during the first 48 hours indicates a potential risk to the Individual, the Facility shall review the Universal Precautions to

see if they appear adequate to mitigate the identified risk.  Where other safety measures are needed, they shall be used, followed, and added to the Individual's records, and the reasons for such measures shall be documented in the Individual's records.

B. Initial Team Meeting.

1. Within five days after admission, the Individual's Team shall review and, if appropriate, update the Individual's Risk Assessment Screen based upon the best information available to the Department.

2. The Individual's Initial Plan of Care is created at the first team meeting. The Initial Plan of Care is authorized by a physician, psychiatrist, or other appropriately trained person as specified by the Department.

3. The Initial Plan of Care shall include a Protection Plan that includes safety measures to prevent any risks identified through the Risk Assessment Screen and other information, consistent with Section IX (Protection Plan) of this Agreement.

C. Continuing Updates.

1. At each Team meeting after the initial Team meeting at which the Individual's Treatment Plan is adopted, the Risk Assessment Screen shall be reconsidered and updated, considering any additional information received about that Individual, consistent with Section XI (Medical and Treatment Records).

12

2. Risk Assessment Screens shall be reviewed and updated every six months or more frequently as warranted by any allegations of sexual victimization or abuse or by the receipt of additional records or information related to an Individual's history of trauma or risk factors.

3. Protection Plans shall be reviewed and updated as needed whenever the Risk Assessment Screen is updated and when the Treatment Plan is reviewed.

4. Treatment Plans shall be reviewed at least every three months and whenever an individual's Risk Assessment Screen is updated.

5. The Team shall consider the following when developing the Treatment Plan:

   a. The Risk Assessment Screen;

   b. The effects of trauma on the Individual, in accordance with Md. Health-Gen. Code §§ 10-701(d) and 10-705; and

   c. The Protection Plan.

D. Nothing in this section is intended to reduce the obligations created by existing law.  The provisions in this Agreement are not intended to replace a clinical determination for the need for ongoing assessments or to track changes in an individual's symptoms.  The use of Risk Assessment Screens and Protection Plans is intended to assist with developing protections for Individuals and to complement the work of the Teams in developing or reviewing the Treatment Plans.

13

VIII.   **Risk Assessment Screens.**

The policies adopted or regulations proposed in accordance with this Agreement shall include provisions for the following:

A.   Use of the Risk Assessment Screen to:

    1.   Identify an Individual's sexual abuse-related trauma history and risk of sexual abuse;

    2.   Consider the Individual's risk of being victimized by, or perpetrating, sexual violence in the Facility; and

    3.   Screen for trauma to consider how a trauma history may impact an Individual's need for protection and Facility responses to risks;

    4.   Consider an Individual's reduced decisional capacity, if any, and if possible; and

    5.   Devise a method to develop a Protection Plan for the Individual, as needed.

B.   In order to provide relevant information for use in the Risk Assessment Screen, each Individual shall be interviewed, and the Individual's responses shall be recorded, regarding:

    1.   Past trauma and issues relevant to his or her risk in the Facility;

    2    Whether the Individual feels safe in the Facility, and why or why not; and

    3.   What would make the Individual feel safe in the Facility.

C.   The Form appended to this Agreement shall be the initial version of the Risk Assessment Screen to be used by the Facilities, unless it is subsequently

revised in accordance with this section and Section XIV.C.7.    The Risk Assessment Screen may be revised periodically by the Central Coordinator in order to improve its effectiveness, provided that, during the life of this Agreement, MDLC is given an opportunity to review it and submit comments in advance of any revisions.

IX.    **Protection Plans.**

The policies adopted or regulations proposed in accordance with this Agreement shall include provisions for the following:

A.  The Team shall consider the Risk Assessment Screen and determine whether and how a Protection Plan might reduce the identified risk of sexual abuse, if any.

B.  If warranted, the Team shall develop a Protection Plan for the Individual.  The Team shall document on the Risk Assessment Screen its rationale for the decision to use or not use a Protection Plan.

C.  An Individual's Protection Plan shall incorporate a spectrum of treatment options and Facility measures for preventing sexual violence and mitigating risk to or by the Individual in a manner that accounts for the Individual's history of trauma as identified in the Risk Assessment Screen.

D.  Development of the Individual's Protection Plan, which shall include consideration of the following non-exclusive factors:

1.  The physical environment of the parts of the Facility that may be accessed by Individuals, including the floor plan and the unit on which the Individual resides;

2.  The Individual's specific room assignment, including his or her roommate;

3.  Activities and programs in which the Individual will be engaging, including the anticipated behaviors of the other Individuals who will also be engaging in those activities;

4.  Particular environments in which activities and programs will take place;

5.  Supervision needed during such activities and programs;

6.  Education and treatment strategies based upon best practices for reducing the risk of harm.  Such strategies may include the following: peer support; group or individual counseling; training on personal boundaries, healthy relationships, self-protection, reducing trauma, promoting recovery, and positive self-image; and identification of services that will be available in the community after release, including advocacy services (such as peer support, self-help, counseling centers, advocacy groups, etc.) and health care or medical supports (and as identified in the Department's after-care planning forms); and

7. Strategies to assist in keeping the Individual safe or that are helpful to de-escalate or redirect the Individual from negative behaviors or abusive patterns and relationships.

E. The policies adopted or regulations proposed shall require periodic review of an Individual's Protection Plan as provided in Section X, including consideration of the efficacy of the strategies used to reduce risk, whether new or modified strategies are warranted, and the Individual's desires regarding the Plan.

F. The Protection Plan shall be labeled as such in a distinct portion of the Individual's Medical Record and shall be documented in a clear manner so that it may easily be referenced and reviewed.

X.   **Treatment Plans.**

A. The policies adopted or regulations proposed in accordance with this Agreement shall include incorporating the Risk Assessment Screen and Protection Plan into the Treatment Plans of Individuals.

B. Each Treatment Plan shall:

1. (a) Use Treatment Plan Problem Numbers; and

   (b) Provide information regarding each Treatment Plan Problem, including specific measures to be taken to address the problem;

2. Record the Treatment Plan Problem in the Individual's record, and, if there is a Treatment Plan Problem associated with risks identified on the

17

Individual's Risk Assessment Screen and in the Protection Plan, record it on those two documents as well.

## XI.  **Medical and Treatment Records.**

The policies adopted or regulations proposed in accordance with this Agreement shall include developing a uniform policy for collection of medical records for Individuals in its Facilities that:

A.  Requires attempts to obtain written consent from the Individual as necessary to obtain needed health care information from non-DHMH facilities, provided that:

   1.  Consent for a minor shall be obtained, when required, from the minor's parent or legal guardian; and

   2.  Consent for an adult with a legal guardian of the person shall be obtained from that legal guardian;

B.  Provides that each Facility shall identify a staff position as the one responsible for obtaining records;

C.  Incorporates the timelines articulated in Section VIII (Process Reforms);

D.  Requires, at a minimum, diligent, on-going attempts to obtain the following types of records for each Individual in a State Facility:

   1.  Any discharge summaries for the preceding three years from all hospitals;

   2.  All somatic and mental health assessments performed in the preceding three years, including emergency department records; and

18

  3. Other significant records identified through external sources.

E. Requires that diligent, on-going attempts be made, and documented, to collect the information listed in Section VIII, at minimum, from the following sources and as relevant;

  1. Other State Facilities;

  2. Local jails or detention centers and facilities operated by the Department of Public Safety and Correctional Services;

  3. The Department of Juvenile Services;

  4. Local Departments of Social Services, to identify other sources;

  5. Private hospitals and clinics;

  6. Any persons with knowledge to identify other sources; and

  7. Any prior service providers, using DHMH's Medicaid database, if possible.

F. Requires that efforts will be made to access records in electronic databases whenever possible and as such data bases become available.

G. Requires that each State Facility maintain in writing its process for receiving and reviewing records to ensure that critical information is provided to and reviewed by an Individual's treating physician and Team as soon as possible.

## XII. Policies for Reporting Allegations of Sexual Abuse.

The policies adopted or regulations proposed in accordance with this Agreement shall include the following requirements and procedures:

A. Facility Staff shall immediately notify the administrative head of a Facility, or his or her designee, and the Central Coordinator, of any allegation received of Sexual Abuse, in accordance with COMAR 10.01.18.05C.(2) and Md. Health-Gen. Code § 10-705.

B. In accordance with Health-Gen. §10-705 and COMAR 10.01.18.05.C.(2)and E.(3), a Facility shall also report complaints of Sexual Abuse to MDLC in its capacity as the State's designated Protection and Advocacy agency.

C. The administrative head of a Facility will notify the head of the Teams for the alleged victim and perpetrator of the reported allegations.

D. Allegations of Sexual Assault shall be reported immediately to the External Law Enforcement Agency for investigation, in accordance with the Memorandum of Understanding that is required by subsection C of Section XIII (Investigating Allegations of Sexual Abuse).

E. Allegations of Wrongful Sexual Acts that do not involve facility staff, as described in Section III.26(a), shall be reported to Facility Police for investigation,  with the following exceptions for

F. The RICAs:

   1. The RICAs shall report all allegations of wrongful sexual acts between an adult and a child to the local Child Protective Services agency; and

   2. The RICAs shall direct all allegations of Wrongful Sexual Acts that do not involved facility staff, as described in Section III.26(a), to the RICA official tasked with internally investigating such allegations.

G. Allegations of Wrongful Sexual Acts that involve Facility Staff, as described in Section III.26(b), shall be reported immediately to the External Law Enforcement Agency for investigation.

H. An Individual who alleges that he or she is a victim of a Wrongful Sexual Act and states a desire to report the incident to External Law Enforcement Agency shall be permitted to make such a report.

I. Allegations shall not be screened for consent or credibility by Facility Staff or Facility Police prior to referring them for investigation.  Rather, staff shall report all allegations in accordance with this section, even if it appears that the allegation has not been accurately reported, subject to the following exceptions:

1. Allegations that are not physically possible shall be reported to the Team for the Individual who is the potential or alleged victim.  The Team shall consider the possibility that Sexual Abuse occurred and, in any event, consider whether any treatment or support is warranted in light of the allegations.

2. If the Team determines that it is possible that Sexual Abuse occurred, the allegation shall be reported for investigation by the External Law Enforcement Agency or the Facility Police, in accordance with this section.

3. If the Team determines that it is possible that Sexual Abuse occurred, the allegation shall be also be communicated to the Team for the

21

Individual who is alleged to be a perpetrator or aggressor for consideration of whether any specific treatment or support is warranted in light of the allegations.

J.  Facility Staff shall take appropriate precautions to protect the confidentiality of all Individuals involved in any allegations of Sexual Abuse.

K.  The Department shall revise its systems for submitting Management Variance Reports and Sexual Abuse Reports to include:

1.  Developing a revised uniform reporting form;

2.  Recording allegations of Sexual Abuse and the reports of subsequent investigation in the Treatment Plans of the individuals involved;

3.  Forwarding the allegations and reports to the Central Coordinator; and

4.  Tracking the use of restraint during transport of an alleged victim to a health care provider, along with any alternative measures used to avoid restraints.

XIII.  **Investigating Allegations of Sexual Abuse.**

A.  Precautions to be taken:

1.  Facility Police shall not investigate an allegation that has been referred to an External Law Enforcement Agency unless and until that agency reports to the Facility that it will not investigate the allegation.

2.  The Facility shall take appropriate steps to ensure the preservation of evidence in all cases that will be or have been referred for investigation.

22

3. For all allegations of Sexual Abuse, the Team shall order that actions be taken to provide for the safety and support of the alleged victim and alleged perpetrator, including, as appropriate:

   a. Immediately separating the alleged victim and the alleged perpetrator and considering whether a Facility or unit transfer would be appropriate in order to maintain the safety and support of the Individuals involved;

   b. Offering clinical support for the Individuals involved, including, if appropriate, for witnesses;

   c. Assessing the safety of the Individuals involved;

   d. Assessing the Individuals' perception of their safety;

   e. Reviewing the Risk Assessment Screens of both the alleged victim and perpetrator, revising Treatment Plans, and revising or developing Protection Plans, as appropriate, including documenting all revisions and reasons for the revisions;

   f. Sending a copy of the Team's review and assessment to the Central Coordinator, in accordance with Section XIV of this Agreement; and

   g. Taking any other action necessary or appropriate to maintain the safety, health, and mental health of the Individuals involved.

B. Facility Staff shall ensure that any investigation for human resources or other purposes does not interfere with any on-going investigation by the External Law Enforcement Agency.

C. Each Facility shall:

    1. Use its best efforts to negotiate a Memorandum of Understanding ("MOU") with the External Law Enforcement Agency for investigation of allegations of Sexual Assault; and

    2. Use its best efforts to ensure that the External Law Enforcement Agency agrees to have a Sexual Assault Response Team ("SART") or similar multidisciplinary group participate with a review or investigation of allegations referred by the Facility.

D. The Facilities shall use its best efforts to ensure that the MOU:

    1. Provides that the appropriate External Law Enforcement Agency shall investigate all allegations of Sexual Assault, as defined in Section III of this Agreement, and in accordance with this section;

    2. Provides for the inclusion of any local SART or other, similar multidisciplinary groups to the maximum extent possible;

    3. Provides that victim advocate services shall be notified and requested to meet with the alleged victim when an allegation of Sexual Assault is received by a Facility, and identify how such entities will be notified and given access to the alleged victim;

    4. Addresses:

(a) Identifying a hospital  reasonably near the facility that provides

medical care and has a Sexual Assault forensic examiner ("SAFE") or

a Sexual Assault nurse examiner ("SANE"); and

(b) Transporting the alleged victim to the identified hospital in a manner

that minimizes trauma;

5.  Provides that each External Law Enforcement Agency shall meet

periodically with other local agencies involved with handling sexual

abuse allegations, including any SART, to review the successes of and

challenges to the process for handling allegations of sexual abuse of

individuals in the facilities, and to coordinate with the Central

Coordinator on considering and addressing any such challenges; and

6.  Requires that the External Law Enforcement Agency provide to the

administrative head of the Facility, the Central Coordinator, and MDLC

in its capacity as the State's designated Protection and Advocacy

agency a copy of the report of its investigation as soon as possible, but

at least within ten working days of completion of the investigation, in

accordance with, *inter alia,* Health-Gen. § 10-705(d).

E.  Facility Staff will use a uniform checklist of actions to take when responding to

allegations of Sexual Abuse.

F.  The Department shall provide training to Facility Staff on the reporting and

investigation policies developed in accordance with this Agreement.  All

Facility Staff shall be trained annually, and the training shall be open to other

25

entities involved in coordinating DHMH's response to Sexual Assault allegations.  Training shall include the following:

1. The roles of law enforcement agencies, the SART team, and the Facility police;

2. Reporting allegations;

3. Understanding the provisions of the Memorandum of Understanding;

4. Transporting Individuals for medical care or to a SAFE exam in accordance with COMAR 10.12.02, including how to support the Individual during transportation and actions that may be taken to avoid the use of restraint;

5. Interacting with the local SART;

6. Preservation of evidence;

7. Collecting and reporting information for investigations; and

8. Counseling alleged victims, including regarding emergency contraception, prophylaxes for HIV or other sexually transmitted infections, and follow-up medical care or appointments.

G. Nothing herein prohibits a State Facility from augmenting the requirements set forth in this Section, as long as Facility policies and practices include the provisions of this Section.

**XIV.**   **Central Coordinator.**

    A. The Department shall appoint two Central Coordinators, one within BHA and one within DDA, whose responsibilities shall include those set out in paragraph C of this section.

    B. The Central Coordinators may delegate duties to other staff but must remain responsible for oversight of the terms of this Agreement.

    C. The Central Coordinators' responsibilities shall be to oversee development of policies and materials, monitor compliance, and recommend changes as appropriate to improve Facility prevention, response, and detection of Sexual Abuse.  These responsibilities include:

        1. Development of policies and materials, including MOUs, as required by this Agreement.

        2. Identification, at least annually, of model practices, evidence-based interventions for Sexual Abuse prevention, detection, and response in Facilities, and new or revised safety measures for use by Facility staff.

        3. Development of a training curriculum for Facility staff, which training may be coordinated with DHMH training departments, to promote consistent implementation of the policies required and developed pursuant to this Agreement.

        4. Revisions to the current system to collect and report data to comply with Section XII.J of this Agreement.

5. Determine whether to recommend that DHMH adopt a policy to limit the use of restraints during transport of alleged victims of sexual assault.

6. Coordinating and communicating with External Law Enforcement Agencies and appropriate community partners (i.e., victim advocates, forensic nurses, etc.) to facilitate implementation of this Agreement and to solicit feedback on Facility Sexual Abuse detection and response.

7. Periodically review, reassess, and revise the Risk Assessment Form to improve its effectiveness, consider best practices, and seek and consider comments from Treatment Team members, Clinical and Facility Directors, and, throughout the term of this Agreement, MDLC.

8. Create a written procedure for a Program Assessment Process ("PAP") to assess compliance with the policies developed in accordance with this Agreement and provide recommendations for modifications of policies as appropriate.  The PAP shall include the following elements:

   a. Record Review:  Selecting and reviewing a representative sample of records from Facilities, at specified intervals;

   b. Review of Data:  Reviewing the system for collection of data and the data reports regarding allegations of Sexual Abuse at Facilities; and

   c. Surveys:  Using consumer advocates or consumer quality review teams to interview and solicit feedback from Individuals

in the Facilities regarding their experiences with facility Sexual Assault prevention, detection, and response.

8. Report annually to DHMH on the development of policies and materials; compliance, including identification of irregularities, inconsistencies or other actions or omissions requiring improvement; and recommendations for any changes to improve Facility prevention, response, and detection of Sexual Abuse.  The report shall be shared with Plaintiffs' counsel, provided that any personal identifying information of patients or consumers is redacted.

## XV.   Timelines.

A. The policies, guidance, training, MOUs, and forms required by this Agreement shall be developed within twelve (12) months of the execution of the Agreement, except as otherwise specifically required by this Section, provided that, if Defendants have made good faith efforts to meet this responsibility but need an extension of time, such request will not be unreasonably denied.

B. Amendments to the current Facility Incident reporting systems (called MVRs and Sexual Abuse Allegations Reporting) used for the State Facilities as provided in this Agreement shall be made within six months of the execution of the Agreement.

XVI. **Release.**

A. The Parties agree that any payment agreed to in this Agreement shall not be construed to mean that Plaintiff is a prevailing party insofar as recovery of attorneys' fees under any State or federal.

B. Plaintiff on her behalf and her heirs, executors, agents, and assigns, do hereby release, acquit, and forever discharge Defendants and each of their respective current, former, and future members, officers, employees, agents, agencies, principals and heirs, executors, administrators, predecessors, successors, and privies, whether in their individual capacities, and all other persons, entities of whatever description, whether subject to suit or not, including any and all entities and individuals named in any suit from any and all manner of claims and demands of whatever nature, including actions and causes of action, appeals, obligations, liabilities, promises, agreements, controversies, suits, rights, damages, punitive damages, costs, loss of service, loss of educational and/or employment opportunities, humiliation, embarrassment, mental anguish, injury to reputation or property, attorneys' fees recoverable now or in the future (including by not limited to attorneys' fees and costs pursuant to any State or federal statute, including Title VII and 42 U.S.C. § 1988), costs of litigation, compensation on account of personal injuries, and any other legal, administrative or equitable relief of any kind, known and unknown, suspected or unsuspected, arising out of, as a result of, or relating in any manner to any acts or omissions that occurred up to the

date of execution of this agreement by the Released Parties related to the matters set forth in Plaintiff's Complaint.

C. Plaintiff expressly agrees and acknowledges that she shall not bring any manner of complaint, claim, or action from any past act or omission arising out of her hospitalizations at Perkins or SETT set forth in her Complaint against the Defendants including but not limited to, any suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, or Maryland state or constitutional law.

D. The Parties acknowledge and agree that the Agreement is entered into in order to compromise disputed claims and to resolve in a fair and amicable manner all disputes between them, and that nothing contained herein or the performance by any party of the promises and conditions contained herein shall be construed as an admission of liability or improper conduct on the part of the Defendants or their members, officers, employees, agents, or related parties or any other person or entity, and the Plaintiff specifically disclaims any further liability or wrongful acts against Plaintiff relating to the incidents alleged in her complaints in *Doe v. DHMH*. The Parties agree that the Agreement shall not be used for any purpose other than those outlined herein.

E. This Agreement may not be assigned. The parties agree that there are no third party beneficiaries to this agreement, intended or otherwise. Nothing in

31

this agreement shall be construed to create a right to enforce it by any person other than a party and the party's respective successors.  Nor shall anything in this agreement be construed to create any duty to, or standard of care with reference to, or any liability to, any person not a party or a successor to a party to this Agreement.

F.  This Settlement Agreement and Release expresses a full and complete settlement, and there is absolutely no agreement on the part of the Released Parties to make any payment or do any act or thing other than what is hereby expressly stated and clearly agreed to.  The Parties further agree that this Settlement Agreement and Release contains the entire agreement between the parties and that is terms are contractual and not a mere recital.  Plaintiff represents, acknowledges, and agrees that in executing this Agreement she does not rely and has not relied upon any representation or statement not set forth or described herein that may have been made by any of the Released Parties or by any of their agents, representatives, or attorneys with regards to the subject matter, basis, or effect of the Agreement or otherwise.

G.  The Parties agree to attempt to resolve informally any differences regarding interpretation of and/or compliance with the terms of this Agreement prior to bringing such matters to a Maryland state court for resolution.

H.  No modification of this Agreement shall be effective unless in writing and signed by Plaintiff, through counsel and her next friend, and Defendants.

32

I. DHMH shall promptly submit this Agreement to the Maryland Board of Public Works for approval as soon as possible, in accordance with the policies and procedures of the Board of Public Works.  DHMH and the Maryland Attorney General's Office agree to recommend approval of this Agreement to the Board of Public Works.

J. Acceptance of the Agreement is subject to final review and approval of the Maryland Board of Public Works before it becomes effective and binding.

K. The Parties agree that this Agreement is not a consent order or consent decree.  Releasor acknowledges and assumes all risk, change, or hazard that such injuries or damages may be or become permanent, progressive, greater, or more extensive than is now known, anticipated or expected.  No promise or inducement which is not herein expressed has been made, and in executing this Release, Releasor does not rely on any statement or representation made by any person, firm or corporation, hereby released, or any agent, physician, doctor, or any other person representing them or any of them, concerning the nature, extent, or duration of such damages or losses or the legal liability therefore.

L. Releasor agrees and promises to indemnify and hold harmless any party to this Release that is sued and/or made a party to any proceeding which is initiated or brought by Releasor or her heirs, executors, administrators, representatives or assigns or on their behalf, arising out of the occurrence or accident described herein, or arising out of any medical or other treatment

33

rendered in connection with those injuries against any and all costs and losses, including counsel fees.

M. In entering into this Release, Releasor has retained and consulted with her own attorney, relating to this Release and its terms and conditions.  Releasor has carefully and fully read this Release (and discussed it with her attorneys); Releasor understands all of the terms and conditions of this Release; Releasor accepts this Release as her own free and voluntary act, without duress; and Releasor intends to be legally bound by this Release.

N. This Release shall not be construed against the party that prepared it, and shall be construed as if all parties prepared it.

O. It is expressly understood that if any provision of this document is found to be invalid or unenforceable, then all other provisions shall nevertheless continue in full force and effect.

The signatures of the Parties follow on separate pages.



IN WITNESS WHEREOF, the Parties have knowingly and voluntarily signed this Settlement Agreement in the case, *Jane Doe v. Maryland Department of Health and Mental Hygiene, et al.*, Civ. A. No. 1:14-cv-03906-WMN, in the United States District Court for the District of Maryland.   This Agreement may be executed in multiple, duplicate originals.  A set of counterpart copies that collectively contains the signature and acknowledgment of all parties will constitute an original.  In addition, signature and acknowledgment of this Agreement may be confirmed by electronic means or facsimile, and signatures obtained via electronic means or facsimile shall have the same effect as receipt of an original signature.

Accepted and Consented to:

Sarah Rhine
Next friend for Plaintiff Jane Doe

September 28, 2016
Date

Lauren Young
Maryland Disability Law Center
(Disability Rights Maryland)

September 28, 2016
Date

Mitchell Y. Mirviss
Venable LLP

September 29, 2016
Date

36

IN WITNESS WHEREOF, the Parties have knowingly and voluntarily signed this

Settlement Agreement in the case, *Jane Doe v. Maryland Department of Health and*

*Mental Hygiene, et al.*, Civ. A. No. 1:14-cv-03906-WMN, in the United States District

Court for the District of Maryland.  This Agreement may be executed in multiple,

duplicate originals.  A set of counterpart copies that collectively contains the signature

and acknowledgment of all parties will constitute an original.  In addition, signature and

acknowledgment of this Agreement may be confirmed by electronic means or facsimile,

and signatures obtained via electronic means or facsimile shall have the same effect as

receipt of an original signature.

Accepted and Consented to:


_____          9-20-16
Van T. Mitchell                           Date

(On behalf of the Maryland Department of Health and Mental Hygiene
 and all individual defendants)


_____          9/23/16
Kathleen A. Morse, Assistant Attorney General   Date
Deputy Counsel, Department of Health and
Mental Hygiene


36

## Court Review and Approval

On this __12th__ day of __October__, 2016, this Settlement Agreement was reviewed and approved by the Honorable William M. Nickerson as satisfactorily and fairly resolving the matter *Jane Doe v. Maryland Department of Health and Mental Hygiene, et al.*, Civ. A. No. 1:14-cv-03906-WMN, and it is so Ordered.

_____.
William M. Nickerson
U.S. District Court Judge

38

For Official Use

8/8/16

**BHA Hospital Sexual Abuse Risk Screen -- Adults**

Date: _____

Indicate why this form is being completed:

_____ Initial (within 48 hours after admission)

_____ Treatment Plan update _____[date]

_____ Receipt of abuse allegations

_____ Receipt of other relevant information

<u>Instructions</u>:

This form has three purposes:

    (a)  to assist in developing a Protection Plan for the individual, if needed;
    (b)  to consider when planning treatment; and
    (c)  to consider when planning training for the individual.

A.  Individual as Potential Victim

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|--------|--------|-------------------------------------|
| 1 | Existing intellectual disability diagnosis? | | |
| 2 | Apparent Physical disability | | |
| 3 | Cognitive Limitations | | |
| | -- orientation | | |
| | -- memory | | |
| | -- confusion | | Presence? Absence? |

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|--------|--------|--------------------------------------|
| 4 | Sexual disinhibitions | | |
| 5 | Poor physical boundaries | | |
| 6 | Childhood physical abuse | | by:<br><br>Frequency:<br><br># of years: |
| 7 | Childhood sexual abuse | | by:<br><br>Frequency:<br><br># of years: |
| 8 | Childhood witness to family violence | | Type:<br><br>By:<br><br>Frequency:<br><br># of years: |
| 9 | History of being in foster care | | When?<br><br>How many homes?<br><br>Any trauma? |
| 10 | History of domestic or partner violence | | |
| 11 | Significant events | | 1st institutionalization:<br><br># of years of incarceration:<br><br>Number of incarcerations |
| 12. | History of being a victim of violent criminal acts | | Crime/act:<br><br>Date: |

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|---|---|---|
| | | | Prison dates: |
| 13 | History of being a victim of sexual abuse as adult | | Type of assault<br><br>Where (institution or community)<br><br>Date of most recent:<br><br>Judicial action taken: |
| 14 | History of being a victim of physical assault as adult | | Type of assault<br><br>Where? (institution or community):<br><br>Date of most recent:<br><br>Judicial action taken: |
| 15 | Fear of being sexually abused or assaulted | | Where?<br>Recent increase/decrease in fear?<br>Any patient suggestions to alleviate? |
| 16 | Evidence of PTSD that is relevant to risk of sexual abuse in the facility | | Explanation:<br>Is further assessment needed?  Y ? N |

B. Individual as Potential Risk to Others

| # | √ | Factor | Source | Identify/describe, None, OR Unknown |
|---|---|---|---|---|
| 1 | | Relevant impulse control issues | | Current?<br><br>Primary behaviors: |
| 2 | | Anger management issues | | Current?<br><br>Primary behaviors: |

| # | √ | Factor | Source | Identify/describe, None, OR Unknown |
|---|---|--------|--------|-------------------------------------|
| | | | | |
| 3 | | History of being abused sexually as child or adult | | Type of assault<br><br>By<br><br>Frequency<br><br> Institution or community<br><br>Date of most recent:<br><br>Judicial action taken: |
| 4 | | History of being abused physically as child or adult | | Type of assault<br><br>By<br><br>Frequency<br><br>Institution or community<br><br>Date of most recent:<br><br>Judicial action taken: |
| 5 | | History of sexual offenses | | Offenses:<br><br>Dates:<br><br>Incarceration? |
| 6 | | History of threatening violence | | To whom?<br><br>Where? |
| 7 | | History of violent behavior: circle those that apply, and/or add others | | towards a person<br><br>Towards  property<br><br>With substance abuse |

Prepared by: _____

              Signature    [Licensed Clinical Staff]


_____   _____      _____

              Print Name                                     Date


Conclusion: Safety & Risk of Harm **is / is not** a Treatment Plan Problem   [circle one].

**If it is a Treatment Plan Problem, prepare a Protection Plan for the individual.**

Describe risk, if any:

_____

Reasons for Conclusion:   _____

_____

_____

Approved by: _____   _____

              Signature, Position [Treatment Team Head]         Date

_____

Printed Name

Provide Treatment Plan Problem Number:   _____


Form reviewed: [dates]
Updated: [dates]

For Official Use

8/8/16

## DDA Facility Sexual Abuse Risk Screen

Date: _____

Indicate why this form is being completed:

_____ Initial (within 48 hours after admission)

_____ Treatment Plan update _____[date]

_____ Receipt of abuse allegations

_____ Receipt of other relevant information

<u>Instructions</u>:

This form has three purposes:

    (a)  to assist in developing a Protection Plan for the individual, if needed;
    (b)  to consider when planning treatment; and
    (c)  to consider when planning training for the individual.

A.  Individual as Potential Victim

| # | Factor | Source | Identify/Describe    OR    Unknown |
|---|--------|--------|-------------------------------------|
| 1 | Past and current intellectual disability diagnosis | | |
| 2 | Apparent physical disability | | |
| 3 | Cognitive Limitations | | |
|   | -- orientation | | |

1

| # | Factor | Source | Identify/Describe    OR    Unknown |
|---|--------|--------|-------------------------------------|
|   | -- memory<br><br>--presence/absence of confusion | | |
| 4 | Sexual disinhibitions | | |
| 5 | Poor physical boundaries | | |
| 6 | Childhood physical abuse | | by:<br><br>Frequency:<br><br># of years: |
| 7 | Childhood sexual abuse | | by:<br><br>Frequency:<br><br># of years: |
| 8 | Childhood witness to family violence | | Type:<br><br>By:<br><br>Frequency:<br><br># of years: |
| 9 | History of being in foster care | | When?<br><br>How many homes?<br><br>Any trauma? |
| 10 | History of domestic or partner violence | | |
| 11 | Significant events | | 1st institutionalization:<br># of years of incarceration:<br>Number of incarcerations |

2

| # | Factor | Source | Identify/Describe   OR   Unknown |
|---|--------|--------|----------------------------------|
| 12. | History of being a victim of violent criminal acts | | Crime/act: <br><br> Date: <br><br> Prison dates: |
| 13 | History of being a victim of sexual abuse as adult | | Type of assault <br><br> Where (institution or community) <br><br> Date of most recent: <br><br> Judicial action taken: |
| 14 | History of being a victim of physical assault as adult | | Type of assault <br><br> Where? (institution or community): <br><br> Date of most recent: <br><br> Judicial action taken: |
| 15 | Fear of being sexually abused or assaulted | | Where? <br> Recent increase/decrease in fear? <br> Any patient suggestions to alleviate? |
| 16 | Evidence of PTSD that is relevant to risk of sexual abuse in the facility | | Explanation: <br><br> Is further assessment needed?  Y ? N |

B. Individual as Potential Abuser

| # | √ | Factor | Source | Identify/describe |
|---|---|--------|--------|-------------------|
| 2 | | Relevant impulse control issues | | Current? <br><br> Primary behaviors: |

| # | √ | Factor | Source | Identify/describe |
|---|---|--------|--------|-------------------|
| 3 |  | Anger management issues |  | Current? Primary behaviors: |
| 4 |  | History of being abused sexually as child or adult |  | Type of assault By: Frequency: Institution or Community: Date of most recent: Judicial action taken |
| 5 |  | History of being abused physically as child or adult |  | Type of assault By: Frequency: Institution or Community: Date of most recent: Judicial action taken: |
| 6 |  | History of sexual offenses |  | Offenses: Dates: Incarceration? |
| 7 |  | History of threatening violence |  | To whom? Where? |
| 8 |  | History of violent behavior: circle those that apply, and/or add others |  | towards a person Towards property With substance abuse |

Prepared by: _____
               Signature    [Licensed Clinical Staff]

_____  _____        _____
               Print Name                                  Date

Conclusion: Safety & Risk of Harm **is / is not** a Treatment Plan Problem   [circle one].

**If it is a Treatment Plan Problem, prepare a Protection Plan for the individual.**

Describe risk, if any:

_____

Reasons for Conclusion: _____

_____

_____

Approved by: _____  _____
                  Signature, Position [Treatment Team Head]           Date

_____
Printed Name

Provide Treatment Plan Problem Number:  _____

Form reviewed: [dates]
Updated: [dates]

5

For Official Use Only

8/8/16

**Sexual Abuse Risk Screen:  for RICAs and SGHC's Adolescent Unit**

Date:_____

Indicate why this form is being completed:
_____ Initial (within 48 hours after admission)

____ Treatment Plan update _____[date]

_____ Receipt of abuse allegations

_____ Receipt of other relevant information

This form has three purposes:

   (a)  to assist in developing a protection plan for the individual, if needed;
   (b)  to consider when planning treatment; and
   (c)  to consider when planning training for the individual.

A.  Individual as Potential Victim

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|--------|--------|-------------------------------------|
| 1 | Existing Intellectual disability diagnosis? | | |
| 2 | Apparent Physical disability | | |
| 3 | Cognitive Limitations | | |
|   | -- orientation | | |
|   | -- memory | | |

1

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|--------|--------|-------------------------------------|
|   | --presence/absence of confusion | | |
| 4 | Sexual boundary concerns | | |
| 5 | Poor physical boundaries | | |
| 6 | Childhood physical abuse | | by: Frequency: # of years: |
| 7 | Childhood sexual abuse | | by: Frequency: # of years: |
| 8 | Childhood witness to family violence | | Type: By: Frequency: # of years: |
| 9 | History of being in foster care | | When? How many homes? Any trauma? |
| 10 | Victim of Relationship violence | | |
| 11. | History of being a victim of violent criminal acts | | Crime/act: Date: Prison dates: |
| 12 | Significant events:  RTC, hospitalization, detention | | Age at 1st institutionalization: Length of time in detention: |

| # | Factor | Source | Identify/Describe, None, OR Unknown |
|---|--------|--------|-------------------------------------|
| 13 | Fear of being sexually abused or assaulted | | Where?<br><br>Recent increase/decrease in fear?<br><br>Any patient suggestions to alleviate? |
| 14 | Evidence of PTSD that is relevant to risk of sexual abuse in the facility | | Explanation:<br><br>Is further assessment needed?  Y ? N |

B. Individual as Potential Abuser

| # | √ | Factor | Source | Identify/describe, None, or Unknown |
|---|---|--------|--------|-------------------------------------|
| 1 | | Relevant impulse control issues | | Current?<br><br>Primary behaviors: |
| 2 | | Anger management issues | | Current?<br><br>Primary behaviors: |
| 3 | | History of being abused sexually as child or adult | | Type of assault<br><br>By:<br><br>Frequency:<br><br>Institution or Community:<br><br>Date of most recent:<br><br>Judicial action taken |
| 4 | | History of being abused physically as child or adult | | Type of assault<br><br>By: |

| # | √ | Factor | Source | Identify/describe, None, or Unknown |
|---|---|--------|--------|-------------------------------------|
| | | | | Frequency: <br><br> Institution or Community: <br><br> Date of most recent: <br><br> Judicial action taken |
| 5 | | History of sexual offenses | | Offenses: <br><br> Dates: <br><br> judicial action: |
| 6 | | History of threatening violence | | To whom? <br><br> Where? |
| 7 | | History of violent behavior: <br><br> circle those that apply, and/or <br><br> add others | | towards a person <br><br> Towards  property <br><br> With substance abuse |

Prepared by: _____

      Signature    [Licensed Clinical Staff]

      _____  _____          _____

      Print Name                                                          Date

Conclusion: Safety & Risk of Harm **is / is not** a Treatment Plan Problem   [circle one].

**If it is a Treatment Plan Problem, prepare a Protection Plan for the individual.**

Describe risk, if any:

_____

Reasons for Conclusion: _____

_____

_____

4

Approved by: _____     _____
                   Signature, Position [Treatment Team Head]            Date

_____
Printed Name

Provide Treatment Plan Problem Number: _____

Form reviewed: [dates]
Updated: [dates]

For official use

8/4/16

## BHA Hospital Sexual Abuse Protection Plan-- Adults

Date: _____

Please indicate when this form is being used:   [check one]

Initial (upon admission)_____                    With Treatment Plan update_____
Upon receipt of other relevant information___    Upon receipt of allegations of abuse___

Instructions:

This form is to be used to describe the elements of a Protection Plan for the individual who has been identified as potentially at risk for engaging in sexual abuse or being a victim of sexual abuse while at the facility.  The information shall also be used when planning treatment and training for the patient.

"RA #" = The corresponding number on the Risk Assessment Form

Circle those items that are possible for the facility and appropriate for the patient.  If the option is not available at the facility, write N/A in the "Specifics" column.  Please write in any other actions not listed on this form.

| RA # | Program/Activity/Protection | Specifics  OR  N/A | Date started | Date ended |
|---|---|---|---|---|
| | DOMAIN:      Environmental | | | |
| | Modified room | | | |
| | Specified  room | | | |
| | Restricted access | | | |
| | Specified roommate | | | |
| | On single sex unit | | | |
| | Room near nurse's station | | | |
| | Locked bathroom | | | |
| | Limited bathroom access | | | |
| | Alarms on specified doors | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | DOMAIN:  Staffing | | | |
| | 1:1 attendant | | | |
| | Constant close observation (line of sight) | | | |
| | Close observation (extra checks) | | | |
| | Restricted to common areas | | | |

| RA # | Program/Activity/Protection | Specifics  OR  N/A | Date started | Date ended |
|---|---|---|---|---|
| | 10-foot restriction | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | DOMAIN:  Activities | | | |
| | Sex offender group  or Personal boundary group | | | |
| | Anger management | | | |
| | Non-violent conflict resolution  therapy | | | |
| | Peer support | | | |
| | | | | |
| | | | | |
| | | | | |
| | DOMAIN:  Individual Training/Education | | | |
| | Personal boundaries | | | |
| | Health relationships | | | |
| | Self-protection | | | |
| | Reducing trauma | | | |
| | Promoting recovery | | | |
| | Positive self-image | | | |
| | Community services | | | |
| | Assertiveness | | | |
| | | | | |
| | | | | |
| | OTHER | | | |
| | | | | |
| | | | | |
| | | | | |

Approved by: _____        _____

Name, Position [Treatment Team Head]        Date

_____

Printed Name

Record Treatment Plan Problem Number:  _____

Form reviewed: [dates]
Updated: [dates]

| For official use |
| --- |
|  |

8/4/16

## Sexual Abuse Protection Plan-- **DDA Facilities**

Date: _____

Please indicate when this form is being used:

Initial (upon admission)_____                    With Treatment Plan update____
Upon receipt of other relevant information_____    Upon receipt of allegations of abuse___

Instructions:

This form is to be used to describe the elements of a Protection Plan for the individual who has been identified as potentially at risk for engaging in sexual abuse or being a victim of sexual abuse while at the facility.  The information shall also be used when planning treatment and training for the patient.

"RA #" = The corresponding number on the Risk Assessment Form

Circle those items that are possible for the facility and appropriate for the patient.  If the option is not available at the facility, write N/A in the "Specifics" column.  Please write in any other actions not listed on this form.

| RA # | Program/Activity/Protection | Specifics  OR  N/A | Date started | Date ended |
| --- | --- | --- | --- | --- |
|  | DOMAIN:    Environmental |  |  |  |
|  | Modified room |  |  |  |
|  | Specified  room |  |  |  |
|  | Restricted access |  |  |  |
|  | Specified roommate |  |  |  |
|  | On single sex unit |  |  |  |
|  | Room near nurse's station |  |  |  |
|  | Locked bathroom |  |  |  |
|  | Limited bathroom access |  |  |  |
|  | Alarms on specified doors |  |  |  |
|  | Wander monitor |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  | DOMAIN:  Staffing |  |  |  |
|  | 1:1 staff |  |  |  |
|  | Constant close observation (line of sight) |  |  |  |
|  | Close observation (extra checks) |  |  |  |
|  | Restricted to common areas |  |  |  |
|  | 10-foot restriction (no less than 10 ft from anyone else) |  |  |  |

| RA # | Program/Activity/Protection | Specifics OR N/A | Date started | Date ended |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | DOMAIN:  Activities | | | |
| | Sex offender group  or | | | |
| | Personal boundary group | | | |
| | Anger management | | | |
| | Non-violent conflict resolution | | | |
| | Counseling | | | |
| | Peer support | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | DOMAIN:  Individual Training/Education | | | |
| | Personal boundaries | | | |
| | Health relationships | | | |
| | Self-protection | | | |
| | Reducing trauma | | | |
| | Promoting recovery | | | |
| | Positive self-image | | | |
| | Community services | | | |
| | Assertiveness | | | |
| | | | | |
| | | | | |
| | OTHER | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Approved by: _____          _____

                Name [Treatment Team Head]          Date

_____

Printed Name, Position

Record Treatment Plan Problem Number:  _____

Form reviewed: [dates]
Updated: [dates]

8/4/16

For Official Use

## Sexual Abuse Protection Plan   -- **RICAs and SGHC Adolescent Unit**

Date: _____

Please indicate when this form is being used:      [check one]

    With Treatment Plan update_____         Initial (upon admission)_____
    Upon receipt of other relevant information____    Upon receipt of allegations of abuse___

<u>Instructions</u>:

This form is to be used to describe the elements of a Protection Plan for the individual who has been identified as potentially at risk for engaging in sexual abuse or being a victim of sexual abuse while at the facility.  The information shall also be used when planning treatment and training for the patient.

"RA #" = The corresponding number on the Risk Assessment Form

Circle those items that are possible for the facility and appropriate for the patient.  If the option is not available at the facility, write N/A in the "Specifics" column.  Please write in any other actions not listed on this form.

| Program/Activity/Protection | Specifics  OR  N/A | Date started | Date Ended |
|---|---|---|---|
| DOMAIN:  Environmental | | | |
| Specified  room | | | |
| Restricted access | | | |
| Specified roommate | | | |
| On single sex unit | | | |
| Room near nurse's station | | | |
| Locked bathroom | | | |
| Limited bathroom access | | | |
| Alarms on specified doors | | | |
| | | | |
| | | | |
| DOMAIN:  Staffing | | | |
| 1:1 attendant | | | |
| Constant close observation (line of sight) | | | |
| Close observation (extra checks) | | | |
| Restricted to common areas | | | |
| 10-foot restriction | | | |
| Escort | | | |
| Modified Schedule | | | |
| | | | |
| | | | |

| Program/Activity/Protection | Specifics  OR  N/A | Date started | Date Ended |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| DOMAIN:  Interventions | | | |
| Sex offender group  or Personal boundary group | | | |
| Anger management | | | |
| Non-violent conflict resolution | | | |
| Counseling | | | |
| Co-ed Restrictions | | | |
| | | | |
| DOMAIN:  Individual Training/Education | | | |
| Personal boundaries | | | |
| Healthy relationships | | | |
| Self-protection | | | |
| Reducing trauma | | | |
| Promoting recovery | | | |
| Positive self-image | | | |
| Community services | | | |
| Assertiveness | | | |
| | | | |
| | | | |
| | | | |
| OTHER | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Approved by:  _____          _____

          Name, Position [Treatment Team Head]          Date

_____

Printed Name

Record Treatment Plan Problem Number:  _____

Form reviewed: [dates]
Updated: [dates]